25-284
*Q3 Investments Recovery Vehicle, LLC v. FDIC*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 10th day of February, two thousand twenty-six.

Present:
> DEBRA ANN LIVINGSTON,
> *Chief Judge,*
> BARRINGTON D. PARKER,
> MICHAEL H. PARK,
> *Circuit Judges.*

_____

Q3 INVESTMENTS RECOVERY VEHICLE, LLC,

     *Plaintiff-Appellant,*

     v.                           25-284

UNITED STATES FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR SIGNATURE BANK,

     *Defendant-Appellee,*

DENIS MCEVOY, TAGLICH BROTHERS, INC., TAGLICH PRIVATE EQUITY, LLC, SIGNATURE BANK,

     *Defendants.*

_____

1

For Plaintiff-Appellant: JENNIFER E. JONES, Paul Thanasides, McIntyre Thanasides Bringgold Elliott Grimaldi & Guito, P.A., Tampa, FL.

L. Reid Skibell, Glenn Agre Bergman & Fuentes LLP, New York, NY.

For Defendant-Appellee: DUNCAN N. STEVENS, United States Federal Deposit Insurance Corporation, Arlington, VA.

Appeal from a judgment of the United States District Court for the Southern District of New York (Garnett, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiff-Appellant Q3 Investments Recovery Vehicle, LLC ("Q3IR") appeals from a judgment of the United States District Court for the Southern District of New York, entered on January 13, 2025, adopting the January 10, 2023 decision and order of the Supreme Court of the State of New York as its own.

This appeal concerns the liability of Defendant-Appellee United States Federal Deposit Insurance Corporation ("FDIC"), as receiver for the failed Signature Bank, for fraud perpetrated against non-customers. In 2018, Q3 I, L.P. ("Q3I"), a Delaware limited partnership, was created to formalize a cryptocurrency trading club developed by non-parties Dr. Quan Tran, James Seijas, and Michael Ackerman.[1] Investors in the partnership purchased limited partnership interests in Q3I with the expectation that Q3I would invest in a proprietary algorithmic cryptocurrency trading strategy managed by the general partner, Q3 Holdings. By December 2019, over 150 limited partners had invested more than $33 million in Q3I.

---

[1] Because this is an appeal from a motion to dismiss, the facts presented are drawn from the allegations in Q3IR's complaint.

The complaint alleges that the entire investment scheme was a fraud. While investors expected that Q3I would use their contributions to invest in a proprietary trading algorithm, there was neither an algorithm nor any trading. Instead, Ackerman and other insiders simply diverted the funds from the partnership's bank accounts to themselves. [2] Nearly all of the money deposited into the Q3I bank account was moved directly from that account into the Q3 Holdings account and then immediately into the personal accounts of Q3 Holdings members, such as Ackerman. Over the two-year life of the Q3I Signature Bank account, only six transfers from the Q3I account to a cryptocurrency exchange occurred.

On December 16, 2020, Q3IR, as assignee of the claims of 73 investors in Q3I, filed a complaint in the Supreme Court of the State of New York, alleging common law and gross negligence claims against Signature Bank. On January 10, 2023, the state court granted defendant Signature Bank's motion to dismiss. While Q3IR's state court appeal was pending, Signature Bank failed and the FDIC was substituted in the proceedings as its receiver. The FDIC exercised its statutory removal power to remove the lawsuit to the United States District Court for the Southern District of New York. Conforming to the approach followed by the Fourth and Ninth Circuits in these circumstances, the district court adopted the state court opinion, in relevant part, as its own.

We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal, which we set forth in this summary order only as necessary to explain our decision to **AFFIRM**.

---

[2] Q3I's fund documents represented that the money paid into Q3I's bank account by the investors would be swept at least every other day into a cryptocurrency exchange. Q3 Holdings, as general partner, would receive 50% of the trading profits and a licensing fee for the use of its (nonexistent) trading algorithm. Because Q3 Holdings was entitled to 50% of the trading profits, Ackerman, as one of its three board members, lied about enormous profits and then took money from Q3I that had not been earned.

*  *  *

In general, "[b]anks do not owe non-customers a duty to protect them from the intentional torts of their customers." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 286 (2d Cir. 2006). However, there is a narrow exception to this general rule:

> "Notwithstanding the aforecited rule, a depositary bank may still be held answerable for the loss of funds misappropriated from a fiduciary account if the bank . . . has actual knowledge or notice that a diversion is to occur or is ongoing. Facts sufficient to cause a reasonably prudent person to suspect that trust funds are being misappropriated will trigger a duty of inquiry on the part of a depositary bank, and a bank's failure to conduct a reasonable inquiry when the obligation to do so arises will result in the bank being charged with such knowledge as inquiry would have disclosed." *Home Sav. of Am., FSB v. Amoros*, 233 A.D.2d 35, 39 (N.Y. App. Div. 1997) (internal citations omitted).

Critically, this exception applies only to fiduciary accounts. There is no "case which even suggests that New York law imposes upon banks a duty to protect non-customers from a fraud involving *depository* accounts." *In re Agape Litig.*, 681 F. Supp. 2d 352, 360 (E.D.N.Y. 2010) (emphasis in original). Accordingly, to survive Signature Bank's motion to dismiss, Q3IR needed to plausibly allege that Q3I opened a fiduciary account rather than an ordinary deposit account.

Federal law provides an additional hurdle for Q3IR's claims. Because assets acquired by the FDIC as receiver of a failed bank are protected from unwritten agreements, to survive the FDIC's motion to dismiss, Q3IR must allege that it opened a fiduciary account at Signature Bank that complies with the Federal Deposit Insurance Act's recording requirements. *See* 12 U.S.C. § 1823(e).

On appeal, Q3IR argues that the state court improperly considered documents outside of the complaint in granting Signature Bank's motion to dismiss and that a three-part test

4

demonstrates that it opened a fiduciary account at Signature Bank.[3] We disagree. Q3IR's complaint makes only conclusory allegations that Q3I's investment documents "demonstrated to Signature . . . that the Q3I account would be a fiduciary account because it would hold funds being managed on behalf of the Victims by their fiduciary." App'x 24. But on the complaint's own terms, the Q3I account would not hold funds being managed in a fiduciary capacity for the investors. Q3I did not manage funds on behalf of investors. Instead, the limited partner investors parted with their funds in return for a limited partnership interest in the returns of the Q3I partnership.

Moreover, as a partnership, a fiduciary duty runs from the general partner to the limited partners. *See, e.g.*, *Wallace ex rel. Cencom Cable Income Partners II, Inc., L.P. v. Wood*, 752 A.2d 1175, 1180 (Del. Ch. 1999) ("Unquestionably, the general partner of a limited partnership owes direct fiduciary duties to the partnership and to its limited partners."). In contrast, no such duty runs from the partnership entity itself to the limited partners. *Cf. A.W. Fin. Servs., S.A. v. Empire Res., Inc.*, 981 A.2d 1114, 1127 n.36 (Del. 2009) ("Under Delaware law, the issuing corporation does not owe fiduciary duties to its stockholders."). Thus, even assuming that Signature Bank inferred a fiduciary relationship from Q3I's partnership structure, the duty would run from Q3 Holdings to Q3I, not from Q3I to the limited partners. Missing from Q3IR's complaint is any allegation that Signature Bank had actual, implied, or written knowledge that the Q3I account was a fiduciary account for the benefit of the limited partners. To the contrary, that this was an operating account for the partnership entity bolsters the FDIC's argument that the Q3I

---

[3] Q3IR frames its argument with respect to a "three-part test" applied by courts "to determine whether a bank is liable to a non-customer." Appellant's Br. at 35. They are mistaken. The test they offer is instead used to determine whether a bank has a heightened duty towards a fiduciary account, not whether an account itself is a fiduciary account. *See Amoros,* 233 A.D.2d at 39 (discussing fiduciary accounts).

account was an ordinary deposit account. Signature Bank would have had no reason to expect additional fiduciary duties beyond those inherent in the law of partnerships.

Even if individuals at Signature Bank believed that the Q3I account was a fiduciary account, federal law would still bar claims derived from such unwritten agreements. *See* 12 U.S.C. § 1823(e)(1)(A) ("No agreement which tends to diminish or defeat the interest of the [FDIC] . . . shall be valid against the Corporation unless such agreement . . . is in writing."). Q3IR's allegations rely on inferences drawn by Signature Bank employees about the duties accompanying the partnership structure. Nowhere in the complaint does Q3IR allege that there was a written fiduciary account agreement at Signature Bank.

\*   \*   \*

We have considered Q3IR's remaining arguments and find them to be without merit.[4] Accordingly, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

---

[4] In particular, because Q3IR's complaint fails to state a claim even without considering the documents with which it takes issue, we need not address whether the state court impermissibly relied on documents extrinsic to the complaint.